UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Caroline Cieminski, et al.

    Plaintiffs,

  v.

BP Canada Energy Marketing Corp.

    Defendant.

Case No. 1:06cv350

Judge Michael R. Barrett

## ORDER

This matter is before this Court pursuant to Defendant's post-trial motion for judgment as a matter of law on Plaintiffs' defamation claim (Doc. 96) and Plaintiffs' post-trial motion for judgment as a matter of law, or in the alternative, motion for a new trial (Doc. 97). Both motions are fully briefed (See Doc. 99, 101 and 98, 100).

The trial in this matter was held December 3, 2007 through December 12, 2007. The jury found for the Plaintiffs (sometimes referred to as "Cieminski") as to the defamation claim, awarding $330,000 in compensatory damages, and for the Defendant (hereinafter "BP") on Plaintiffs' remaining claims. The jury also found against Defendant on its counterclaims. Both sides now ask this Court to enter judgment as a matter of law and Plaintiffs also ask this Court, in the alternative, to grant a new trial.

Plaintiffs argue that given the jury's unanimous verdict that BP defamed Cieminski that there is no legally sufficient evidentiary basis for the jury to find for Defendant on Cieminski's claims of intentional interference with a existing and prospective contractual relations and breach of contract. Defendant argues that the Plaintiffs failed to establish any of the elements required under Ohio law to prevail on the defamation claim; that even if

Defendant's used and published the alleged statements, they are not defamatory under Ohio law; and that BP had qualified immunity.

Facts

A brief explanation of the facts are as follows: Plaintiff was working as an independent contractor with Pinnacle Energy at the time that Defendant BP acquired Pinnacle Energy.  Defendant then offered Plaintiff employment as a gas originator.  She accepted by entering into a three year employment contract effective December 21, 2005.  The employment contract contained a one year non-solicitation agreement which was not applicable should BP terminate Plaintiff without cause or if Plaintiff terminated the agreement for good reason.

A situation arose wherein Plaintiff eventually tendered a letter, on May 10, 2006, to BP setting out her complaints and demanding that they addressed.  She also set forth a time table of 45 days in which we would terminate her contract for good reason.  (PX 10).  Plaintiff felt that there had been a substantial adverse alteration in the nature of her employment since she was required to do "back office" work instead of selling gas.  She also felt that the customers she brought to BP were not receiving the service that she expected them to be receiving.

BP interpreted the letter sent by Plaintiff to be a resignation letter.  Plaintiff explained that it was not intended to be a resignation letter, only to put BP on notice that if her concerns were not addressed with 45 days that she would then terminate her contract for what she considered to be "good reason".

In an attempt to secure alternative employment, Plaintiff entered into contractual relations with two companies, Hess Corporation and CenterPoint Energy, to sell natural

gas. BP then sent letters to these companies informing them that Plaintiff was violating the law and breaching her contract by seeking to do business with BP customers. (PX20). The letter sent to CenterPoint Energy also enclosed what it called "Caroline Cieminski's Employment Contract/Non-Compete Agreement and Information and Invention Agreement." The record demonstrates that the agreement was titled only "Employment Agreement" and that it did not contain a non-compete clause, only a non-solicitation clause. After receipt of the letter, Hess terminated Cieminski's contract (PX23).

Plaintiffs' complaint alleged breach of contract, gender discrimination, defamation, intentional interference with existing contractual relations and intentional interference with prospective contractual relations. Defendant filed a counterclaim alleging breach of contract, tortious interference with contractual and business relations, breach of duty of loyalty, violation of Ohio Trade Secrets Act, defamation and conversion. As previously set forth above, the jury found for Plaintiffs on their defamation claim and awarded $330,000. The jury found against Plaintiffs on their remaining claims and against Defendant on its counterclaims.

Legal Analysis

Federal Rule of Civil Procedure 50(b) provides:

> If the Court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. ... the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:
>
>> (1) allow the judgment on the verdict, if the jury returned a verdict;
>> (2)  order a new trial; or
>> (3) direct the entry of judgment as a matter of law.

Fed. R. Civ. P. 50(b). In a federal question case, it is not the province of this Court to weigh the evidence presented or the credibility of the witnesses. The judgment of this court should not be substituted for that of the jury; instead, the evidence should be viewed in the light most favorable to the party against whom the motion is made, and that party given the benefit of all reasonable inferences. Thus, the court should give credence to the evidence favoring the nonmovant as well as that "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). *See also Tisdale v. Fed. Express Corp.,* 415 F.3d 516, 531 (6th Cir. 2005); *Tuttle v. Metro. Gov't*, 474 F.3d 307, 315 (6th Cir. 2007). A trial court must affirm the jury verdict unless there was "no legally sufficient evidentiary basis for a reasonable jury to find for [the prevailing] party." *White v. Burlington Northern & Santa Fe R. Co.*, 364 F.3d 789, 794 (6th Cir. 2004)(quoting Fed. R. Civ. P. 50(a)).

In a case before the Court on diversity grounds, the Court is to apply the state-law standard of review when the Rule 50(b) motion is based upon a challenge to the sufficiency of the evidence. *See Morales v. American Honda Motor Co.*, 151 F.3d 500 (6th Cir. 1998). Thus, in this case, the Court is required to construe the evidence most strongly in favor of the non-moving party and determine whether reasonable minds could come to but one conclusion based upon the evidence submitted. *See Ohio Civ. R. 50(A)(4); Bicudo v. Lexford Properties, Inc.*, 157 Ohio App.3d 509 (Mahoning County, 2004).

Pursuant to Federal Rule of Civil Procedure 59(a) a new trial may be granted "in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R.

Civ. P. 59(a). "Generally courts have interpreted this language to mean that a new trial is warranted when a jury has reached a 'seriously erroneous result' as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias." *Hendrix v. City of Cincinnati*, 2007 U.S. Dist. LEXIS 86862 (S.D. Ohio Nov. 14, 2007) *citing Holmes v. City of Massillon*, 78 F.3d 1041, 1045-46 (6th Cir. 1996). The Court "should deny the motion if the verdict is one which could reasonably have been reached, and the verdict should not be considered unreasonable simply because different inferences and conclusions could have been drawn or because other results are more reasonable." *J.C. Wyckoff & Assocs., Inc. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1487 (6th Cir. 1991) (citation omitted).

<u>Plaintiffs' Motion</u>

As to Plaintiffs' first argument that it is entitled to judgment on the claim of breach of contract, the Court finds that this argument does not have merit. Based upon the evidence submitted and viewing such evidence in favor of Defendant, this court must affirm the jury verdict as there was a legally sufficient evidentiary basis for a reasonable jury to find for the Defendant. There was evidence presented by David Flaugher, via cross examination, that it was the job of all originators to do back office work and that such work was caused, in part, by the increased workload generated by Hurricane Katrina. (Trial Transcript 5-64 to 5-67; 5-73; hereinafter Tr.Trans. ____). Gary Lauck and Brad Spanski also testified that back office work was part of their jobs as originators. (Tr. Trans. 4-153, 4-154, 4-171). Plaintiffs argue that there was also evidence presented the an originator's main job is to sell gas and not do administrative work. However, based upon the contents

5

of the Plaintiff Cieminski's letter (PX 10) and the above referenced testimony a reasonable jury could find that Plaintiff Cieminski did not have good cause to terminate the contract and that her letter was, in fact, a resignation. (See Tr. Trans. 2-32, 2-33, 2-45).

As to Cieminski's claims of intentional interference with existing and prospective contractual relations, the Court finds that this argument has merit. Plaintiffs' argue that since the jury found for Plaintiffs on their defamation claim that it must also have found for them on the intentional interference with existing and prospective contractual relations claims. Defendant responds that the verdict does not set forth the specific actions for which the jury found defamation. Although this is true, there was no other evidence submitted from which the jury could have found another action to be defamatory. Plaintiffs presented letters written by BP to Hess Corporation and CenterPoint Energy as well as testimony regarding letters and conversations between Mr. Flaugher and prospective employers. (See PX 20, Tr. Trans. 2-137 to 2-141). Cieminski testified that it was these letters that caused her contract with Hess to be terminated immediately after Hess's receipt of the letter and her relationship with CenterPoint to be put under review.[1] (See Tr. Trans. 3-21 to 3-23). She also testified that a letter from BP caused another job offer to be pulled. (See Tr. Trans. 3-24). Based upon this evidence and the defamation verdict, the Court finds that, even viewing the evidence in favor of the Defendant, that there was no legally sufficient evidentiary basis for a reasonable jury to find for the Defendant on this issue.

---

[1] Defendant argues that this claim was not set forth in the Complaint or any subsequent amended complaints. However, Plaintiff responds that she did incorporate all her allegations into the defamation count. The Court agrees and further adds that it was clear that Plaintiff was making these arguments at trial and no objection was made at that time.

*See White v. Burlington Northern & Santa Fe R. Co.*, 364 F.3d at 794. However, the Court finds that additional damages would be inappropriate since the acts that comprised the defamation claim are the same acts that comprised the intentional interference with existing and prospective contractual relations claim.

Defendant's Motion

Defendant raises three grounds for judgment as a matter of law: (1) Plaintiffs failed to establish any of the elements required under Ohio law to prevail on the defamation claim; (2) even if Defendant's used and published the alleged statements, they are not defamatory under Ohio law and (3) BP had qualified immunity for making such statements.

As set forth above, the trial court must affirm the jury verdict unless there was "no legally sufficient evidentiary basis for a reasonable jury to find for [the prevailing] party." *White v. Burlington Northern & Santa Fe R. Co.*, supra. It is unclear from the jury verdict what specific action or actions the jury found to be defamatory. However, BP's entire motion focuses on the alleged defamatory statements made by BP agents to its customers as alleged in the Third Amended Complaint and does not address the letter BP sent to Hess and CenterPoint as well as other companies. During the trial little or no evidence was shown in regards to any alleged defamatory statements made by BP agents to its customers about why Cieminski left BP. Instead, Plaintiffs, via testimony and documents, presented evidence regarding the letters written by BP (PX20). As addressed in Footnote 1 above, BP argues that Plaintiffs did not allege that the letters sent by BP were defamatory in their Third Amended Complaint. Plaintiffs respond that they incorporated such allegation by referenced. It is clear from reviewing the complaint that such allegation is set forth. See paragraphs 20-25 of the Third Amended Complaint. Viewing the evidence in favor of

7

Plaintiffs, a reasonable jury could find the letters to be defamatory. The letters stated that Cieminski had a non-compete agreement when, in fact, she did not and her contract with Hess was terminated, according to Cieminski, because of the letter sent by BP.

Conclusion

For the foregoing reasons, Defendant's post-trial motion for judgment as a matter of law on Plaintiffs' defamation claim (Doc. 96) is DENIED and Plaintiffs' post-trial motion for judgment as a matter of law, or in the alternative, motion for a new trial (Doc. 97) is DENIED, in part, and GRANTED, in part.

**IT IS SO ORDERED.**

*s/Michael R. Barrett*
Michael R. Barrett, Judge
United States District Court